IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

In Propria Persona
JOSEPH A. GIBSON, III,

Plaintiff,

FILED
OCT 12 2021
IN THIS OFFICE
Clerk U.S. District Court
Greensboro, N.C.

CASE NO. 1:21CV791

VS. Captain Shane Bullins
Sherriff SAm scott Page
CHRIS FREEMAN, NC District Court
Judge; MALCOM FARRELL, NC
Probation Officer; J O LAWRENCE,
NC Magistrate; JACKSON, NC
Sheriff; CHRISTINA STRADER, NC
District Court Judge; MS. OVERBY,
Detention Staff member; MS.
LUTZ, Detention Staff Member;
JANE DOE #1, NC Victim's Advocate;
JANE DOE #2, Detention Nurse;
JOHN DOE #1, Sheriff; JOHN DOE #2,
Sheriff; JOHN DOE #3, Bailiff/Sheriff;
JOHN DOE #4; CAPTAIN BILLY KING
Detention Center Administrator;
JOHN DOE #5, Sheriff; JOHN DOE #6,
Sheriff; JOHN DOE #7, Sheriff; JOHN
DOE #8, Sheriff; JOHN DOE #9,
Sheriff; JOHN DOE #10, Sheriff
JEFFERY ALLEN HUX, Asst. Dist. Att.,
Honorable Erica Brandon
Attorney mArk keeney
In Their Individual
And
Official Capacities

Defendants.

CIVIL RIGHTS COMPLAINT
WITH A JURY DEMAND

OCTOBER 12, 2021

_____/

1

**COMES NOW**, Plaintiff Joseph A. Gibson, III, in the above-entitled action, acting In Propria Persona, seeking declaratory, injunctive, and monetary relief for violation(s) of plaintiff's Federally protected Constitutional rights, by the above-named Defendants, who were at all times mentioned herein, acting "under color of law", and claims and says:

## I. AS TO THE JURUSDICTION

1. Jurisdiction is conferred unto this Honorable Court, pursuant to, *42 USC Sec. 1983; 28 USC Sec. 1331 (3), (4); 28 USC Sec. 1343; 28 USC Sec. 2201* and *2202; 18 USC Secs. 1962, 1964 and 1968; FRCP R. 57 and 65, et. seq.*

## II. STATEMENT OF THE CASE

2. Plaintiff is a citizen of the United States, age 48, who at all times mentioned herein was a resident of Rockingham County, NC, for the past sixteen (16) years, a homeowner in town of Stokesdale, NC.

3. On May 11, 2020, plaintiff was served by the Rockingham County Sheriff(s) with an *Ex-parte Protective Order*, signed by the Honorable District Court Grogan, J., sought by plaintiff's then live-in companion (Bridget Pruitt), who lived with the plaintiff for the past thirteen (13) years, resulting in the birth of two (2) male children.

4. On May 20, 2020, a hearing was scheduled for the above matter (3, Supra.), however, on June 10, 2020, plaintiff was alleged to have violated said protective order (3, Supra.), by sending a text message to Bridget Pruitt.

5. On July 1, 2020, a Domestic Violence Protective Order hearing was held, but postponed/continued until July 21, 2020, which resulted in a finding by

the Honorable Erica Brandon, J., that the *Ex-parte* order (3-4, Supra.) would continue to be enforced for one year.

6. On October 22, 2020, plaintiff entered into a mutual Custody Agreement with Bridget Pruitt (3-4, Supra.), and on December 3, 2020, plaintiff was charged again with violation of said protective order (3, Supra.), for sending a text message even though the said custody agreement (6, Supra.), clearly stated that, "...all previous issues and matters were resolved..." and said agreement allowed for communication via text messaging between plaintiff and Bridget Pruitt (See: Exhibit "A") attached to this Complaint and incorporated herein as though more fully rewritten herein).

7. On May 26, 2021, approximately fifteen (15) days after the said protective order (3, Supra.) had expired, (Expiration date of May 11, 2021), and prior to any motion by Bridget Pruitt (hereinafter "Ms. Pruitt), for renewal as required by NC State Law, plaintiff was again arrested, and while at the Rockingham County District Court (hereinafter "RCDC"), in a hallway accessing the courtroom(s), plaintiff son saw plaintiff and shouted, "Hi Daddy!", to which plaintiff replied, "Hello Little Man!", and at that point Jane Doe #1 shouted, "You are not allowed to speak to this child!" Plaintiff responded by informing Jane Doe #1 that plaintiff was allowed by custody consent decree. Jane Doe #1 responded with, "We will see about that!", and two (2) Sheriffs shortly appeared and handcuffed the plaintiff and took the plaintiff to the jail where plaintiff was served with a "Criminal Summons" for speaking to plaintiff's son; alleged violation of said (expired) protective order (3, Supra.).

8. On July 21, 2021, Ms. Pruitt filed for renewal of said protective order (3, Supra.), (See: Exhibit "B"), and a hearing on said renewal was held before the

3

Honorable Chris Freeman, J., wherein plaintiff's motion to dismiss and articulation was denied, and oral notice of appeal made by plaintiff (See: Exhibits "C" & "D" attached hereto and incorporated herewith as though more fully rewritten herein). During said hearing the Honorable Chris Freeman, J., stated upon the Court Record, <u>inter alia</u>, to the effect, "State Legislatures have entrusted state judges to change State Statutes".

9. On August 31, 2021, under duress, plaintiff, believing plaintiff could not receive any viable and equitable justice in the entire RCDC, pled guilty to two (2) counts of the original protective order (3, Supra), and as a result was sentenced to one (1) year supervised probation with a seventy-five day suspended sentence.

10. On September 10, 2021, plaintiff, after discovering newly discovered exculpatory evidence, instructed plaintiff's attorney to withdraw plaintiff's plea, which is allowed and was done within allowable time frame.

11. On September 21, 2021, plaintiff was required to report to Probation Officer Malcom Farrell. Upon reporting, plaintiff explained that plaintiff's plea (9, Supra.) was withdrawn and the plaintiff was no longer subject to probation. However, Probation Officer Malcom insisted plaintiff was still subject to probation and required plaintiff to "sign and date" the "conditions of probation".

12. Moreover, plaintiff, under duress, signed the conditions of plaintiff's probation (11, Supra.), however, immediately after signing said conditions of probation, plaintiff was informed by Probation Officer Malcom, "I have some bad news for you, I have two arrest warrants for violation of your conditions of probation". Plaintiff then stated to the said probation officer: "You are not kidnapping me, I want to see a magistrate and have a probable cause hearing".

4

13. Thereinafter (11-12, Supra.), plaintiff was immediately brought before Magistrate J O Lawrence, at which time plaintiff told Magistrate J O Lawrence that plaintiff had filed a mandamus addressing prior phony warrants (active at this date before the NC Supreme Court), that he (Lawrence) had signed off on, and that this was a conflict of interest. Magistrate J O Lawrence then ran away and hid around a corner yelling, "I cannot help you!". Plaintiff then shouted, "This place is a mockery, sham, and a farce. I demand to see a federal magistrate and assert my constitutional rights I refuse to be kidnapped!" However, John Doe #3 began hysterically screaming at the plaintiff to "shut up and sit down!" Plaintiff responded by stated, "I am not your dog!".

14. Thereinafter, (1-13, Supra.), plaintiff was stripped of all articles of clothing, and property, and locked in a holding cell in the booking area of the Rockingham County Detention Center (hereinafter "RCDC") and remained there for approximately four (4) hours until John Doe #4 escorted plaintiff to a cell block area. Plaintiff requested a telephone call and John Doe #4 told plaintiff, "You get nothing!" and slammed the cell door in plaintiff face.

15. On September 22, 2021, Defendant Overby question the plaintiff while at the RCDC as to whether the plaintiff wanted an attorney, and requested the plaintiff's Social Security number, plaintiff told Defendant Overby plaintiff wanted a phone call. Defendant said she knows nothing about phone calls and asked again for plaintiff's Social Security number, and the plaintiff explained he did not want to apply for Social Security, and no one should retaliate against the plaintiff for refusing to give a Social Security number. Defendant Overby told plaintiff, plaintiff would never see a judge if plaintiff did not give up plaintiff's Social Security number. Defendant Overby then stated "whatever, go back to your cell".

- 5

16. Approximately six (6) hours later (15, Supra.) plaintiff was presented before a video screen, handcuffed and shackled. Plaintiff could hardly hear the person speaking, but was able to detect the voice of Defendant Jeffery Allen Hux, stating plaintiff was a danger to the general public and was asking for a $100,000.00 bond for the present misdemeanor charges. Plaintiff recognized Defendant Freeman's voice and plaintiff was ordered by Defendant Freeman not to speak. Plaintiff did not receive a probable cause hearing, was not allowed to speak, was placed on house arrest and a $15,000.00 bond. The sum total of all bonds paid prior to any release of the plaintiff amounted to $45,000.00.

17. Thereinafter (15-16, Supra.), plaintiff was in a cell at the RCDC sleeping in a sitting position with a sheet covering plaintiff's entire body when John Doe #5 began to pound on the cell door yelling, "Hey, you can't sleep like that" to which plaintiff responded, "I have a medical condition and I have to sleep sitting up". John Doe #5 told the plaintiff to lay down or he (John Doe #5) would strap the plaintiff down. Plaintiff complied and lay down.

18. Thereinafter (16, Supra.) plaintiff woke up being startled only to find several Officers standing above the plaintiff (at least John Doe #6, 7, and 8), and plaintiff exclaimed "What the heck is wrong with you?" and, "I want a phone call!". At this point, Defendant Lutz (very heavy in body mass), dropped down upon the plaintiff's back and began bouncing up and down while laughing and says: "Here is your phone call. You want to make us look bad, huh?". Plaintiff was gasping for air and one of the Defendant John Doe #6-8 order plaintiff to roll over, while the other Defendant John Doe #6-8 (one of), began to slam the plaintiff's head on the floor repeatedly with their foot. Plaintiff pasted out at this point.

6

19. After the events of 18, Supra., plaintiff regained consciousness and was confronted by an unidentified EMS worker who began to ask plaintiff questions, i.e., "Where are you?". Plaintiff responded, "Hell, it must be Hell". Plaintiff was sitting in a wheelchair and an unknown Officer (unknown to plaintiff) ordered plaintiff to pick up plaintiff's feet, but before plaintiff had the opportunity to lift plaintiff's feet the Officer began to push the wheelchair violently which caused the plaintiff's feet to be trapped under the wheelchair foot rests. When plaintiff screamed in pain the Officer laughingly said, "I told you to pick your feet up!" Plaintiff was examined in what plaintiff believes was a RCDC medical unit.

20. After 19, Supra., plaintiff was escorted to an isolated cell which appeared to be "Rubber" lined. Plaintiff was stripped of all clothing, had no access to a toilet, water, and was told by one of the John Doe Defendants, that, "This is where you are gonna stay!" Upon immediately seeing Jane Doe #2, plaintiff asked for a phone call, but Jane Doe #2 told plaintiff she did not care about phone calls. Plaintiff responded, "But I have a Constitutional right to at least one phone call". Defendant Jane Doe stated, "Oh, you're gonna pull that Constitutional crap – now you get nothing".

21. As time passed, plaintiff began to become weak, hungry, and thirsty. Plaintiff's head began to throb, and the pain was unbearable with fluid and blood dripping from the head wound plaintiff received from being stomped (18, Supra.). After nearly the completion of the first day in the isolation cell plaintiff was given a small portion of food and a small dixie type cup of water.

22. Thereinafter, on the same day, (21, Supra.), plaintiff asked Defendant Jackson if plaintiff could use a telephone and see a doctor, to which Defendant

7

Jackson replied, "I will see what I can do." Plaintiff did not speak with said Jackson further that evening.

23. Thereinafter, 22, Supra., John Doe #9 and #10, began to work the booking area where plaintiff was confined (rubber room), and plaintiff crawled to the cell door and asked to use a phone, and to see a doctor because plaintiff was urinating blood. One of the John Doe (#9 or #10) began to laugh and asked plaintiff where plaintiff was from. Plaintiff responded, "Originally from North New Haven CT", and the John Doe Defendant began to laugh loudly and blurted out, "That figures. Yup, you look like someone from the North, You know you could have said something like the Bronx, NY or Queens, someplace famous!". Plaintiff returned with, "What the hell is wrong with you people around here. This is not 1863. This 2021! Did you not swear an oath to uphold the Constitution – were your fingers crossed or something!" Defendants John Doe #9 and #10 began to giggle, and then one of the Defendants covered the cell widow so that plaintiff could no longer see out of the cell. Plaintiff was told if plaintiff said one more word plaintiff would be chained to the floor grate which covered a hole in the floor where plaintiff was forced to defecate while in that cell.

24. Plaintiff remained in custody under the same conditions for seven (7) days, and at one point wrote in plaintiff's own blood upon the cell floor the words "Help", fearing for plaintiff's own life. Plaintiff, urinated in a dixie cup with the hope someone would see his medical condition and realize plaintiff was seriously injured from prior beating (18, Supra.); to no avail.

25. Plaintiff was taunted over the next several days by detentions staff, being informed plaintiff was being released, then come back to the cell and tell plaintiff, "Opps, we made a mistake, ha-ha-ha!"

8

26. On or about, September 24, 2021, Defendant Farrell served plaintiff with two separate violations of the conditions of probation. Defendant Farrell expressed that he was ordered by the prosecution to violate plaintiff and serve the plaintiff. Defendant, while serving plaintiff written violations of probation, asked the plaintiff, "What the hell happened to your head?" Plaintiff explained everything that had happened to plaintiff, and this in the presence of John Doe #11. John Doe #11 said, "There is nothing I do to help you". At that, plaintiff requested Defendant Farrell to contact a member of the plaintiff's family. Defendant Farrell asked the plaintiff if plaintiff was able to use a phone, and plaintiff told Defendant Farrell, "Haven't you been listening to what I said is going on here?" Defendant Farrell just walked away from plaintiff's cell.

27. After approximately eight days the plaintiff was given medication and allowed to make a one (1) minute phone call. Plaintiff tried to explain to plaintiff's Mother what was going on and was told Plaintiff's bond had been posted "last week" (See: Exhibits E, F, G), the phone went dead and plaintiff was returned to plaintiff's designated hole in the floor toilet cell.

28. Plaintiff received no recreation or shower time, nor out of cell time during plaintiff's confinement at the RCDC.

29. Plaintiff continuously suffers from headache, body pain, and is receiving medical treatment at this present time.

30. On October 2, 2021, plaintiff was released from the RCDC and placed on house arrest with GPS monitoring.

31. On information and belief, several members of the plaintiff's family, and plaintiff's Pastor made several contacts with Defendant King, and were told that plaintiff was not being released because there were no GPS units

9

available, even though, plaintiff had made bond. That there were only 25 GPS units in the county, and that, plaintiff would have to wait until someone violated their conditions of probation, or a protective order who was wearing a GPS monitor, so one would become available, even though plaintiff had posted bond in the amount totaling $45,000.00.

32. On information and belief, Bondsman Lamar (Triple Triangle Bail Bonds, 323 Gilmer St. #205, Reidsville, NC 27320 (336) 690-8295) made several telephone calls to Defendant King in an attempt to seek plaintiff's release after bond was posted; to no avail.

33. On October 5, 2021, plaintiff appeared in the RDC before the Honorable Christina Strader, Defendant named herein, and was told three times in open Court that if plaintiff chose to represent himself, plaintiff would be held to the same standards as an attorney trained at law.

34. On information and belief, all Defendants named herein acted under "color of law", officially, individually, and at times in unison, to deprive the plaintiff of Federally Constitutionally protected rights.

35. During the above events, while held at the RDC, at least $100.00 was stolen from the plaintiff's wallet while in the care and custody of Capt. Billy King.

36. During the above events, and as a result of the herein named Defendants actions, plaintiff's rental car remained unlocked and in the RDC parking lot, resulting in plaintiff suffering financial loss, and towing fees.

37. During the above events, plaintiff paid bail bonds for alleged herein illegal violations of probation charges.

10

## III. AS TO THE LAW

### CLAIM ONE

35. The acts, practices, customs, and policies of the Defendants, as described above (2-36, Supra), violate plaintiff's Due Process and Equal Protection rights, in violation of the *U.S. Constitution, Fifth, Ninth, through the Fourteenth Amendments.*

36. The acts, practices, customs, and policies of the Defendants, as described above (2-36, Supra), violate the plaintiffs right to be free from cruel and unusual punishment, in violation of the *U.S. Constitution, Amendments, Eight, Nine, through the Fourteenth Amendment.*

### CLAIM TWO

37. At all times mentioned herein (2-36, Supra.), each named Defendant was acting "under color of law".

38. On information and belief, the RCDC and RDC (same building) is being used by the herein named Defendants as an established "Criminal Enterprise", for illegal profit(s), to illegally gain corporeal and incorporeal property, in violation of, *Title 18 USC Sec. 1962, et. seq.*

39. On information and belief, all herein named Defendants are engaged in a pattern of racketeering activity committed in furtherance of an ongoing "Criminal Enterprise", in violation of, *Title 18 USC Sec. 1962, et. seq.*

11

40. On information and belief, the herein named Defendants, knowingly and willfully, engaged in a predicate act by conspiring in unison to "Obstruct Justice" in violation of, *Title 18 USC Sec. 1503*, and *Sec. 1962, et. seq.*

41. On information and belief, all herein named Defendants, in furtherance of their pattern of racketeering activity, knowingly and willfully conspired to retaliate against the plaintiff, in violation of *Title 18 USC Secs. 1511-1512*, and *Sec. 1962, et. seq.*

42. On information and belief, all herein named Defendants, in furtherance of the named "Criminal Enterprise", have, and continue to use "Interstate Commerce" to further the goals of the "Criminal Enterprise", by way of use of federally regulated telecommunications, U.S. Postal Services, and other like means in violation of, *Title 18 USC Secs. 1341* and *1343*, and *1962, et. seq.*

43. Through the unison conspiratorial actions of the herein named Defendants, via a pattern of racketeering activity, in furtherance of their "Criminal Enterprise", plaintiff was and continuously remains injured, financially (35 - 36, Supra.), i.e., medical treatment costs, loss of rental car costs, towing charges, and personal physical injury.

44. Defendant Malcom Farrell, and other John Doe members of said "Criminal Enterprise", through a pattern of racketeering activity, willfully and knowingly conspired to falsely imprison the plaintiff by having plaintiff sign conditions of probation, and then arresting plaintiff for violating those conditions, while said Defendants had full knowledge that, two probation violation warrants were issued prior to plaintiff signing the conditions of probation; Defendant's having full knowledge that plaintiff could not have known plaintiff was in violation of those conditions prior to signing those conditions (See: Exhibits "H" "I" and "J").

## IV. AS TO THE RELIF SOUGHT

45. Plaintiff believes plaintiff is entitled to the relief herein sought.

46. A Preliminary Injunction and Permanent Injunction barring the named, and unnamed Defendants from harassing, retaliating, and/or impeding in any manner the free exercise of plaintiff's *US Constitutional Rights* as mandated by the *Bill of Rights.*

47. A Declaratory Judgment stating the acts, practices and policies as described in this instant complaint, *sub judice*, have violated plaintiff's Constitutional Rights, as secured by the *US Const. Amends. Five, Eight, Nine* through the *Fourteenth.*

48. Monetary and Compensatory Damages in the amount of, 3.5 million dollars.

49. Punitive Damages in the amount of, 1.5 million dollars.

50. Treble Damages pursuant to, *Title 18 USC Sec. 1964 (c)*, in the amount of, 15 million dollars.

51. Call for a Civil Investigative Demand, pursuant to *Title 18 USC 1968.*

52. Plaintiff's Court Costs and Attorney Fees (if any).

53. Trial by Jury on all issues triable by Jury.

53. Any other and further relief this Honorable Court deems, just, proper, and equitable. That justice be done.

**Dated:** October 8, 2021

PLAINTIFF

Joseph A. Gibson, III
264 Red Oak Dr.
Stokesdale, NC 27357

(336) 419-7236
**In Propria Persona**

## VERIFICATION

I, Joseph Gibson, III, the Plaintiff herein, being at least 21 years of age, and a citizen of the United States, hereby state under penalty of perjury that, the foregoing is true and correct to the best of my knowledge, accept those allegations made in this Complaint on information and belief, however, I do believe them to be true and correct.

**Dated: October 8, 2021.**

_____
Joseph A. Gibson, III, **pro-se**