**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
JOSEPH A. GIBSON,              )
                              )
          Plaintiff,          )
                              )
          v.                  )        1:21CV791
                              )
CHRIS FREEMAN, et al.,        )
                              )
          Defendants.         )
```

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States
Magistrate Judge for a recommended ruling on Plaintiff's Motion for
Preliminary Injunction and/or TRO (Docket Entry 3; see also Docket
Entry 4 (Memorandum in Support of instant Motion)), filed in
conjunction with his Civil Rights Complaint (Docket Entry 2; see
also Docket Entry 2-1 (Attachments to Complaint)) and Application
to Proceed in District Court without Prepaying Fees or Costs
(Docket Entry 1).[1]  The Court should deny the instant Motion and
should dismiss this action under 28 U.S.C. § 1915(e)(2)(B), for
failure to state a claim and/or due to judicial and/or
prosecutorial immunity, except as to the individual-capacity claim
against Defendant Ms. Lutz for excessive force (and without

---

[1] A magistrate judge may not "determine . . . a motion for
injunctive relief," 28 U.S.C. § 636(b)(1)(A), but may
"submit . . . recommendations for the disposition, by a [district]
judge of the court, of any [such] motion," 28 U.S.C.
§ 636(b)(1)(B).

prejudice to Plaintiff's right to pursue individual-capacity claims for excessive force and/or deliberate indifference to serious medical needs against unnamed employees of the Rockingham County Detention Center, if he later can identify them).

<u>INTRODUCTION</u>

In his Complaint, Plaintiff purports to sue 13 named individuals (i.e., three state judges, a state magistrate, an assistant district attorney, a state probation officer, an attorney, the Sheriff of Rockingham County, and five of the Sheriff's employees), as well as 12 unnamed individuals (<u>see</u> Docket Entry 2 at 1 (listing Defendants in caption)), under 42 U.S.C. § 1983, "for violation(s) of [P]laintiff's Federally protected Constitutional rights" (<u>id.</u> at 2), specifically, "[his] Due Process and Equal Protection rights" (<u>id.</u> at 11) and "[his] right to be free from cruel and unusual punishment" (<u>id.</u>).[2]  The Complaint bases those claims on events:

1) beginning "May 11, 2020, [when P]laintiff was served . . . with an Ex-parte Protective Order . . . sought by [P]aintiff's then live-in companion" (<u>id.</u> at 2 (emphasis omitted); <u>see also</u> <u>id.</u> at 2-3 (stating that, after hearing on "July 21, 2020," state judge ruled "that the Ex-parte order would continue to

---

[2] The Complaint also asserts a claim under the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. (<u>See</u> Docket Entry 2 at 11-12.)

-2-

be enforced for one year" (emphasis and internal citation omitted)));

2) continuing through "August 31, 2021, [when,] under duress, [P]laintiff, believing [he] could not receive any viable and equitable justice in the entire [Rockingham County District Court], pled guilty to two (2) counts of [violating] the original protective order, and as a result was sentenced to one (1) year supervised probation with a seventy-five day suspended sentence" (id. at 4 (internal citation omitted); see also id. at 2 ("[O]n June 10, 2020, [P]laintiff was alleged to have violated said protective order, by sending a text message to [his former companion]." (internal citation omitted)), 3 (alleging that, on May 26, 2021, "[P]laintiff was served with a 'Criminal Summons' for speaking to [his] son[ in] alleged violation of said (expired) protective order"), 4 ("On September 10, 2021, [P]laintiff, after discovering newly discovered exculpatory evidence, instructed [his] attorney to withdraw [P]laintiff's plea, which is allowed and was done within allowable time frame."));

3) after which, "[o]n September 21, 2021, [P]laintiff was required to report to [a p]robation [o]fficer" (id. at 4), and, "under duress, signed the conditions of [P]laintiff's probation" (id.), whereupon the probation officer served "two arrest warrants for violation of [the] conditions of probation" (id. (internal quotation marks omitted)), resulting in Plaintiff's appearance

-3-

before a state magistrate and confinement in the Rockingham County Detention Center (see id. at 5-6 (describing Plaintiff's initial, overnight detention and next-day appearance before state judge, who "placed [Plaintiff] on house arrest [with] a $15,000 bond"));

4) until, "October 2, 2021, [when P]laintiff was released from the [Rockingham County Detention Center] and placed on house arrest with GPS monitoring" (id. at 9; see also id. at 6-8 (detailing conditions of confinement, including incident in which, after Plaintiff demanded to make a telephone call, "Defendant Lutz (very heavy in body mass) dropped down upon [P]laintiff's back and began bouncing up and down while laughing and say[ing]: 'Here is your phone call.  You want to make us look bad, huh?,'" leaving "Plaintiff [] gasping for air . . . while [a] Defendant John Doe . . . began to slam [P]laintiff's head on the floor repeatedly with [Defendant John Doe's] foot," causing Plaintiff to "pas[s] out," followed by his placement in an "isolated cell which appeared to be 'Rubber' lined," while "stripped of all clothing[ and without] access to a toilet[ or] water," in "pain [that] was unbearable with fluid and blood dripping from the head wound [P]laintiff received," and "urinating blood," where "[he] remained in custody under the same conditions for seven (7) days"), 10 ("On October 5, 2021, [P]laintiff appeared in the [Rockingham County District Court] . . . and was told three times [by a state judge]

-4-

that if [P]laintiff chose to represent himself, [he] would be held to the same standards as an attorney trained at law.")).

As relief, the Complaint seeks a combined total of $20,000,000 in compensatory, punitive, and treble damages (see id. at 13), as well as "[a p]reliminary [i]njunction and [p]ermanent [i]njunction barring the named and unnamed Defendants from harassing, retaliating, and/or impeding in any manner the free exercise of [P]laintiff's US Constitutional Rights" (id. (emphasis and stray comma omitted)) and "[a d]eclaratory [j]udgment stating the acts, practices and policies as described in th[e C]omplaint . . . violated [P]laintiff's Constitutional Rights" (id. (emphasis omitted)). Relatedly, the instant Motion asks the Court:

A) to "issue a preliminary injunction and/or temporary restraining order directing [ D]efendants, and/or their agents, to cease and to desist from any further unlawful arrest(s), harassment, imprisonment, contact, and [c]ourt proceedings" (Docket Entry 3 at 1-2); and

B) "[to] place [] Plaintiff, and any further pending legal action against [] Plaintiff, by [ D]efendants, and/or their agents, under the supervisory control of this Honorable Court" (id. at 2).

DISCUSSION

"The federal in forma pauperis ['IFP'] statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts

-5-

'solely because his poverty makes it impossible for him to pay or secure the costs.'" Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (quoting Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 342 (1948)). "Dispensing with filing fees, however, [is] not without its problems. Parties proceeding under the statute d[o] not face the same financial constraints as ordinary litigants. In particular, litigants suing [IFP] d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." Nagy v. Federal Med. Ctr. Butner, 376 F.3d 252, 255 (4th Cir. 2004). To address this concern, the IFP statute provides, in relevant part, that "the [C]ourt shall dismiss the case at any time if the [C]ourt determines . . . the action . . . fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B) (internal paragraph number omitted).

A plaintiff "fails to state a claim on which relief may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii), when the complaint lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must

-6-

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[3] Section 1915(e)(2)(b)'s immunity-related, dismissal provision, in turn, generally applies to situations where doctrines established by the United States Constitution and/or at common law immunize governments and/or government personnel from liability for monetary damages. See, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984) (discussing sovereign immunity of states and state officials under Eleventh Amendment); Pierson v. Ray, 386 U.S. 547 (1967) (describing interrelationship between Section 1983 and common-law immunity doctrines, such as judicial, legislative, and prosecutorial immunity); cf. Allen v. Burke, 690 F.2d 376, 379 (4th Cir. 1982) (noting that, even where "damages are theoretically available under [certain] statutes . . ., in some cases, immunity doctrines and special defenses, available only to public officials, preclude or severely limit the damage remedy").

_____

[3] Although "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted).

Case 1:21-cv-00791-LCB-LPA   Document 7   Filed 11/03/21   Page 7 of 26

In this case, Plaintiff appears to meet the financial criteria for pauper status (see Docket Entry 1); however, most of his claims fail as a matter of law and/or falter on immunity grounds. To begin, the Complaint does not allege any concrete actions or omissions by Defendant Attorney Mark Keeney (let alone conduct on his part constituting state action within the meaning of Section 1983). (See Docket Entry 2 at 1-14.) Accordingly, the Court should dismiss any claim(s) against him, pursuant to Section 1915(e)(2)(B)(ii). See Iqbal, 556 U.S. at 678 (explaining that absence of "factual matter" supporting claim warrants dismissal); see also American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999) ("To state a claim for relief in an action brought under [Section] 1983, [a plaintiff] must establish [a] depriv[ation] of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law. . . . [T]he under-color-of-state-law element of [Section] 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (internal citation omitted)); Kirk v. Curran, No. 3:09CV301-3, 2009 WL 2423971, *1 (W.D.N.C. Aug. 4, 2009) (unpublished) ("[N]either public defenders nor private criminal attorneys are 'state actors' under [Section] 1983."), aff'd, 357 F. App'x 529 (4th Cir. 2009).

Next, the Complaint contains claims against three state judges and a state magistrate for their roles in Plaintiff's proceedings.

-8-

(See Docket Entry 2 at 2–3 (describing ruling by Defendant Honorable Erica Brandon "that the Ex-parte order would continue to be enforced for one year" (emphasis and internal citation omitted), 4 (objecting to Defendant Chris Freeman "stat[ing] upon the [c]ourt [r]ecord, inter alia, to the effect, 'State Legislatures have entrusted state judges to change State Statutes'" (emphasis omitted)), 5 (accusing Defendant J.O. Lawrence of presiding while under "conflict of interest" arising from his issuance of "phony warrants"), 6 (referencing Defendant Freeman's handling of proceeding in which "Plaintiff did not receive a probable cause hearing[ and] was not allowed to speak"), 10 (detailing Defendant Christina Strader's in-court statements to Plaintiff about obligations of pro se litigants).) The Complaint also targets (A) "[Defendant] Probation Officer Malcolm [Farrell for, on September 21, 2021,] insist[ing P]laintiff was still subject to probation and requir[ing him] to sign and date the conditions of probation" (id. at 4 (internal quotation marks omitted)), as well as "immediately" thereafter serving him with "two arrest warrants for violation[s]" (id. (internal quotation marks omitted)), and (B) a state prosecutor, "Defendant Jeffrey Allen Hux, [for] stating [in a hearing that P]laintiff was a danger to the general public and [] asking for a $100,000.00 bond" (id. at 6).

"Judges performing judicial acts within their jurisdiction are entitled to absolute immunity from civil liability claims," In re

-9-

<u>Mills</u>, 287 F. App'x. 273, 279 (4th Cir. 2008) (emphasis added); <u>see also</u> <u>Pressly v. Gregory</u>, 831 F.2d 514, 517 (4th Cir. 1987) ("As judicial officers, magistrates are entitled to absolute immunity for acts performed in their judicial capacity."), "even if such acts were allegedly done either maliciously or corruptly," <u>King v. Myers</u>, 973 F.2d 354, 356 (4th Cir. 1992). "Probation officers are also entitled to absolute immunity from suits for damages for alleged conduct performed in a quasi-judicial capacity . . . . A determination that a violation of a [supervisee's] conditions of supervision has occurred is a quasi-judicial function entitled to such immunity." <u>Young-Bey v. Jones</u>, Civ. No. 21-771, 2021 WL 1215771, at *2 (D. Md. Mar. 31, 2021) (unpublished); <u>see also</u> <u>Douglas v. Muncy</u>, 570 F.2d 499, 500-01 (4th Cir. 1978) ("[P]ursuant to [Section] 1983, [the plaintiff] asked for damages for the denial of his constitutional rights from . . . his parole officer, who allegedly had arbitrarily enforced the conditions of his parole . . . . [T]he district court was correct in its conclusion that . . . [the plaintiff's] parole officer[] was [] immune from such liability."). Coordinately, "absolute immunity appl[ies] with full force," <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430 (1976), to a prosecutor's conduct "intimately associated with the judicial phase of the criminal process," <u>id.</u>

-10-

Given that authority, the Court should dismiss any individual-capacity claims against Defendants Freeman, Farrell, Lawrence, Strader, Hux, and Brandon, pursuant to Section 1915(e)(2)(B)(iii).[4]

---

[4] To the extent the Complaint alleges that Defendant Farrell acted as an arm of a prosecutor (rather than a judge) (see Docket Entry 2 at 9 ("On or about September 24, 2021, Defendant Farrell served [P]laintiff with two separate violations of conditions of probation. Defendant Farrell expressed that he was ordered by the prosecution to violate [P]laintiff['s probation] and serve [ P]laintiff." (stray comma omitted))), absolute immunity still defeats the claim. See, e.g., Pilgrim v. Delaney, No. 7:20CV2325, 2021 WL 274301, at *2 (D.S.C. Jan. 27, 2021) (unpublished) ("[The p]laintiff also brings claims against . . . his probation officer, related to the revocation of his probation. . . . [The probation officer] is entitled to prosecutorial immunity with respect to her part in [the] revocation."). Alternatively, "[e]ven if [D]efendants [Farrell and Hux] are not cloaked in absolute immunity, [Plaintiff's] constitutional claim would be precluded by qualified immunity. In contrast to absolute immunity, qualified immunity shields a government official from liability for civil monetary damages if the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Gant v. United States Probation Office, 994 F. Supp. 729, 734 (S.D.W. Va. 1998). The Complaint does not allege factual matter sufficient to show that Defendants Farrell and Hux violated any such clearly established right in connection with the probation violation warrants; instead, the Complaint relies on conclusory allegations (which fall short under Iqbal). (See Docket Entry 2 at 4.) The Complaint's Racketeer Influenced Corrupt Organizations ("RICO") claim similarly rests on bald assertions that "Defendants are engaged in a pattern of racketeering activity committed in furtherance of an ongoing 'Criminal Enterprise,'" that they "conspir[ed] in unison to 'Obstruct Justice,'" and that they "have, and continue to use 'Interstate Commerce' to further the goals of the 'Criminal Enterprise.'" (Id. at 11-12.) As a result, it fails as a matter of law (meriting dismissal under Section 1915(e)(2)(B)(ii)). See, e.g., Sealy v. U.S. Bank Nat'l Ass'n, No. 3:20CV431, 2021 WL 1178063, at *3 (W.D.N.C. Mar. 29, 2021) (unpublished) ("[The p]laintiffs' conclusory and unspecified statements in the[ir c]omplaint fail to establish the necessary elements of a RICO claim, and fail to allege a pattern of racketeering activity with
(continued...)

Case 1:21-cv-00791-LCB-LPA   Document 7   Filed 11/03/21   Page 11 of 26

The foregoing analysis leaves, as named Defendants, Rockingham County Sheriff Sam Scott Page and five of his employees, Captain Shane Bullins, Jackson (identified only as "NC Sheriff"), Ms.

the required specificity."). Further, although the Complaint alleges that Defendant Farrell knew about Plaintiff's mistreatment in detention, but failed to stop it (see Docket Entry 2 at 9), those allegations cannot support a conditions-of-confinement-based claim against Defendant Farrell, as sheriffs or their employees (not probation officers) control jail operations in North Carolina, see N.C. Gen. Stat. § 162-22 ("The sheriff shall have the care and custody of the jail in his county; and shall be, or appoint, the keeper thereof."). Finally, the official-capacity claims for damages against Defendants Freeman, Farrell, Lawrence, Strader, Hux, and Brandon warrant dismissal under Section 1915(e)(2)(B)(ii), because (A) the State of North Carolina employs them, see, e.g., N.C. Gen. Stat. §§ 7A-3 (bringing all court operations under State authority), 7A-60 et seq. (creating prosecutorial districts, establishing positions of district attorney and assistant district attorney to prosecute criminal actions in name of State, and providing for their compensation), 15-204 et seq. (establishing position of probation officer under Secretary of Public Safety to serve state courts)), (B) "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989), (C) "[a]s such, it is no different from a suit against the State itself," id., and (D) "a State is not a person within the meaning of [Section] 1983," id. at 64. "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under [Section] 1983 because official-capacity actions for prospective relief are not treated as actions against the State." Id. at 71 n.10 (internal quotation marks omitted). Such claims, however, still cannot proceed against Defendants Freeman, Lawrence, Strader, and Brandon, because (as judges) "they are immune from requests for injunctive relief," Pearson v. West, No. 5:16CT3182, 2017 WL 5163368, at *5 (E.D.N.C. June 26, 2017) (unpublished), recommendation adopted, 2017 WL 5163235 (E.D.N.C. Nov. 7, 2017) (unpublished), or against Defendants Farrell and Hux, because the Complaint does not allege facts showing that "execution of [the State's] policy or custom . . . inflict[ed] the [alleged] injury," Collins v. City of Harker Heights, 503 U.S. 115, 121 (1992) (internal quotation marks omitted) (see Docket Entry 2 at 1-14).

Overby (identified as "Detention Staff member"), Lutz (identified as "Detention Staff Member"), and Captain Billy King. (Docket Entry 2 at 1 (listing Defendants in caption).) The Complaint makes no allegations specific to Defendants Page or Bullins. (See Docket Entry 2 at 1-14.) The Court therefore should dismiss any claim(s) against them, pursuant to Section 1915(e)(2)(B)(ii). See Iqbal, 556 U.S. at 678 (explaining that absence of "factual matter" supporting claim warrants dismissal).[5]

As to Defendant Overby, the Complaint alleges only as follows:

On September 22, 2021, Defendant Overby question[ed P]laintiff while at the [Rockingham County Detention Center] as to whether [ P]laintiff wanted an attorney, and requested [ P]laintiff's Social Security number[. P]laintiff told Defendant Overby [P]laintiff wanted a phone call. Defendant [Overby] said she knows nothing about phone calls and asked again for [P]laintiff's Social Security number, and [ P]laintiff explained he did not want to apply for Social Security, and no one should retaliate against [ P]laintiff for refusing to give a Social Security number. Defendant Overby told [P]laintiff[ that P]laintiff would never see a judge if [P]laintiff did not give up [P]laintiff's Social Security number. Defendant Overby then stated "whatever, go back to your cell".

---

[5] To the extent Plaintiff would rest his claim(s) on the supervisory title(s) of the above-referenced Defendants and/or the doctrine of respondeat superior, such theories of liability do not exist under Section 1983. See Iqbal, 556 U.S. at 676-77 ("[V]icarious liability is inapplicable to . . . [Section] 1983 suits . . . . In a [Section] 1983 suit . . . – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. . . . [E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

-13-

(Docket Entry 2 at 5.) Significantly, the Complaint further admits that, contrary to Defendant Overby's statement that "[P]laintiff would never see a judge if [P]laintiff did not give up [P]laintiff's Social Security number" (id.), "approximately six (6) hours [after Defendant Overby made that statement, P]laintiff was presented before a video screen" (id. at 6), for a proceeding before a judge, who "placed [Plaintiff] on house arrest [with] a $15,000.00 bond" (id.). Neither a jail staff member's request for a detainee's Social Security number (in connection with assessment of qualification for court-appointed counsel) nor an unfulfilled admonition that failure to comply with that request would result in denial of access to a court proceeding violates the United States Constitution. See, e.g., Lewis v. Casey, 518 U.S. 343, 349 (1996) (reiterating "that an inmate alleging a violation of [the constitutional right of access to courts] must show actual injury"); Cassano v. Carb, 436 F.3d 74, 75 (2d Cir. 2006) ("[T]he Constitution does not provide a right to privacy in one's SSN."); see also Bowen v. Roy, 476 U.S. 693 (1986) (rejecting constitutional challenge to requirement that applicant for government benefits submit Social Security number).[6]

---

[6] Subject to various exceptions, "Section 7[ of the Privacy Act of 1974, 5 U.S.C. § 552a,] 'makes it illegal for a governmental agency to deny an individual any right, benefit, or privilege based on the individual's refusal to disclose his or her social security number.'" Haywood v. Owens, No. 8:19CV1025, 2019 WL 2292548, at *3

(continued...)

-14-

The entirety of the Complaint's allegations about Defendant Jackson consist of the following: "[O]n [September 22, 2021, P]laintiff asked Defendant Jackson if [P]laintiff could use a telephone and see a doctor, to which Defendant Jackson replied, 'I will see what I can do.' Plaintiff did not speak with [Defendant] Jackson further that evening." (Docket Entry 2 at 7-8.) Those allegations fail to state a claim for at least two reasons.

First, "pretrial detainees do not have a constitutional right to . . . telephone privileges." Oliver v. Butler, No. 5:12CT3060, 2015 WL 846755, at *10 (E.D.N.C. Feb. 26, 2015) (unpublished); accord, e.g., Boose v. Adkins, No. 3:18CV1480, 2020 WL 3086885, at

---

⁶(...continued)
(D.S.C. Apr. 23, 2019) (unpublished) (internal brackets omitted) (quoting Greidinger v. Almand, 30 F. Supp. 3d 413, 415 (D. Md. 2014)), recommendation adopted, 2019 WL 2284931 (D.S.C. May 29, 2019) (unpublished). That provision may not fall within the scope of Section 1983 and may not impose liability on local governmental units. See, e.g., Dittman v. California, 191 F.3d 1020, 1029 (9th Cir. 1999). In any event, "regardless of whether [Section] 1983 provides a mechanism for enforcing [the] Privacy Act and irrespective of Section 7's applicability to state and local agencies, the Privacy Act is not applicable to individuals." White v. Cain, No. 2:10CV1182, 2011 WL 1087489, at *7 (S.D.W. Va. Mar. 21, 2011) (unpublished). Moreover (and to the extent the Complaint's official-capacity claim against Defendant Overby effectively lies against an entity – e.g., the Office of the Sheriff of Rockingham County – rather than an individual), the above-quoted allegations of the Complaint confirm that Plaintiff promptly received a court appearance and thus neither Defendant Overby nor her employing entity "denied [Plaintiff] a legal right based on [his] nondisclosure [of his Social Security number] so as to potentially violate[] the Privacy Act," El-Bey v. North Carolina Bd. of Nursing, No. 1:09CV753, 2009 WL 5220166, at *2 (M.D.N.C. Dec. 31, 2009) (unpublished), recommendation adopted, 2010 WL 3283070 (M.D.N.C. Aug. 19, 2010) (unpublished).

*19 (S.D.W. Va. May 20, 2020) (unpublished), <u>recommendation adopted</u>, 2020 WL 3078333 (S.D.W. Va. June 10, 2020) (unpublished); <u>Bratcher v. Hampton Roads Reg'l Jail</u>, No. 1:16CV224, 2018 WL 1037052, at *7 (E.D. Va. Feb. 21, 2018) (unpublished), <u>aff'd</u>, 738 F. App'x 793 (4th Cir. 2018). Second, assuming Plaintiff's condition at the time of his alleged interaction with Defendant Jackson manifested signs of injury "so obvious that even a lay person would easily recognize the necessity for a doctor's attention," <u>Iko v. Shreve</u>, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks omitted), the Complaint does not establish that Defendant Jackson engaged in unconstitutional deliberate indifference by "disregard[ing] the risk posed by th[at] serious medical need[]," <u>id.</u> (internal quotation mark omitted).[7]

In particular, the Complaint's allegations about Defendant Jackson leave open two obvious possibilities: (1) Defendant Jackson intentionally – or at least with a "*mens rea* (or 'guilty mind') equivalent to criminal-law recklessness," <u>Campbell v. Florian</u>, 972 F.3d 385, 395 (4th Cir. 2020) (italics in original) – did not follow through on his promise to "see what [he]

---

[7] Although the above-quoted case involved a prison inmate whose claim for "fail[ure] to provide adequate medical care . . . sound[ed] in the Eighth Amendment," <u>Iko</u>, 535 F.3d at 241, in parallel fashion, "a pretrial detainee makes out a due process violation if he shows deliberate indifference to serious medical needs," <u>Martin v. Gentile</u>, 849 F.2d 863, 871 (4th Cir. 1988) (internal quotation marks omitted).

c[ould] do [about Plaintiff seeing a doctor]" (Docket Entry 2 at
8); or (2) Defendant Jackson did follow through on that promise,
but – through no fault (or at least no fault greater than
negligence) on Defendant Jackson's part – Plaintiff still did not
get to see a doctor (e.g., Defendant Jackson notified the medical
staff at the Rockingham County Detention Center that Plaintiff
needed to see a doctor, but that staff took no action).  The latter
scenario would not reflect deliberate indifference by Defendant
Jackson.  See Iko, 535 F.3d at 241 ("Beyond [actual] knowledge [of
the risk of harm to the inmate arising from his medical needs],
however, the officer must also have recognized that his actions
were insufficient to mitigate the risk of harm to the inmate
arising from his medical needs." (internal quotation marks
omitted)); see also Grayson v. Peed, 195 F.3d 692, 695 (4th Cir.
1999) ("Deliberate indifference is a very high standard — a showing
of mere negligence will not meet it.").  Moreover, because the
Complaint offers no basis to select "between th[e latter,] obvious
alternative explanation for [Plaintiff's failure to see a doctor
after speaking to Defendant Jackson] and the purposeful, invidious
[neglect by Defendant Jackson which Plaintiff] asks [the Court] to
infer," Iqbal, 556 U.S. at 682 (internal quotation marks omitted),
the "[C]omplaint has not nudged [Plaintiff's] claims of [deliberate
indifference] across the line from conceivable to plausible," id.
at 680 (internal brackets and quotation marks omitted).

-17-

Turning to Defendant King, the Complaint alleges, "[o]n information and belief, [that] several members of [P]laintiff's family and [P]laintiff's pastor made several contacts with Defendant King, and were told that [P]laintiff was not being released because there were no GPS units available, even though [P]laintiff had made bond." (Docket Entry 2 at 9-10 (stray comma omitted); see also id. at 10 ("On information and belief, [a b]ondsman . . . made several telephone calls to Defendant King in an attempt to seek [P]laintiff's release after bond was posted; to no avail.").) The Complaint, however, additionally acknowledges that (A) the state court's release order required not only Plaintiff's posting of a bond, but also his "place[ment] on house arrest" (id. at 6), and (B) Defendant King explained to persons inquiring on Plaintiff's behalf "[t]hat there were only 25 GPS units in the county, and that[ P]laintiff would have to wait until someone violated their conditions of probation, or a protective order [while] wearing a GPS monitor, so one would become available [for Plaintiff's release on house arrest]" (id. at 9-10).

Those acknowledgments preclude liability against Defendant King, particularly given that "the United States Constitution does not establish an absolute right to bail, nor does federal statutory law provide a right to bail in state criminal cases. . . . As Plaintiff ha[d] no federal right to be released on bond, his claims regarding [delayed release pending GPS monitor availability] must

-18-

fail." <u>Odom v. Smalls</u>, C.A. No. 3:09-629, 2009 WL 3805594, at *3 (D.S.C. Nov. 12, 2009) (unpublished); <u>see also</u> <u>Dawson v. Board of Cnty. Comm'rs of Jefferson Cnty.</u>, 732 F. App'x 624, 632 (10th Cir. 2018) ("[The] asserted right to be free from pretrial detention having paid court-ordered bond, but awaiting the fulfillment of another court ordered release condition, is not a fundamental right. . . . Thus, so long as the policies which caused [the] continued detention are not imposed for the purpose of punishment, but instead reasonably relate to a legitimate governmental objective, the policies are constitutional . . . ." (internal citation and quotation marks omitted)).[8]

In sum, the Court should dismiss the claims against Defendants Overby, Jackson, and King, pursuant to Section 1915(e)(2)(B)(ii), for failure to state a claim. However, the Complaint's allegations against Defendant Lutz stand on different ground. In that regard, as the United States Supreme Court has decreed:

_____

[8] The allegation that, "while held at the [Rockingham County Detention Center], at least $100.00 was stolen from [P]laintiff's] wallet while in the care and custody of [Defendant] King" (Docket Entry 2 at 10) likewise does not make out a Section 1983 claim. <u>See</u> <u>Tate v. Smith</u>, No. 1:14CV125, 2017 WL 1843269, at *12 (M.D.N.C. May 5, 2017) (unpublished) ("North Carolina law permits an individual to pursue a conversion claim against 'a public official who by an unauthorized act wrongfully deprives an owner of his property.' <u>Wilkins v. Whitaker</u>, 714 F.2d 4, 6 (4th Cir. 1983) (citing <u>Gallimore v. Sink</u>, 27 N.C. App. 65, 67, 218 S.E.2d 181, 182 (1975)). [The p]laintiff's ability to pursue a conversion claim against [the d]efendants 'satisfies the requirements of due process.' <u>Id.</u> at 7." (internal footnote omitted)), <u>recommendation adopted</u>, slip op. (M.D.N.C. May 31, 2017).

> [T]he Due Process Clause protects a pretrial detainee
> from the use of excessive force that amounts to
> punishment. . . . [S]uch 'punishment' can consist of
> actions taken with an expressed intent to
> punish. . . . [I]n the absence of an expressed intent to
> punish, a pretrial detainee can nevertheless prevail by
> showing that the actions are not rationally related to a
> legitimate nonpunitive governmental purpose or that the
> actions appear excessive in relation to that purpose.

Kingsley v. Hendrickson, 576 U.S. 389, 397-98 (2015) (some internal quotation marks omitted). Because the Complaint alleges facts (recounted in the Introduction) that (if believed) would support a finding that Defendant Lutz employed excessive force against Plaintiff under the above-quoted standard, the Court should permit that individual-capacity claim to proceed.[9]

---

[9] The Complaint likewise contains sufficient factual matter (again, as quoted in the Introduction) to sustain a claim for excessive force against the Defendant John Doe who allegedly followed up on Defendant Lutz's battery by stomping Plaintiff's head against the ground (see Docket Entry 2 at 6) and (at least arguably) may allege facts adequate to state a claim for deliberate indifference to serious medical needs against two other Defendant(s) John Doe(s) (see id. at 8). Nonetheless, "[t]he designation of a John Doe defendant is generally not favored in the federal courts . . . ." Chidi Njoku v. Unknown Special Unit Staff, No. 99-7644, 217 F.3d 840 (table), 2000 WL 903896, at *1 (4th Cir. July 7, 2000) (unpublished); see also Strauss v. City of Chicago, 760 F.2d 765, 770 n.6 (7th Cir. 1985) ("[A]llowing a complaint to be filed against an unnamed party in the first place is viewed with disfavor."); Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980) ("As a general rule, the use of 'John Doe' to identify a defendant is not favored."). Moreover, the Fourth Circuit recently rejected the position "that a court may dismiss a suit for failure to name a John Doe defendant *only* if it does not appear that the true identity of an unnamed party can be discovered through discovery or through intervention by the court." Attkisson v. Holder, 925 F.3d 606, 628 (4th Cir. 2019) (internal quotation marks omitted). Instead, the Fourth Circuit has endorsed the notion (continued...)

-20-

Conversely, the Complaint does not allege facts adequate to allow Plaintiff's official-capacity claim against Defendant Lutz (or any Defendant affiliated with the Office of the Rockingham County Sheriff) to survive. Under Section 1983, official-capacity liability arises only if "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Collins v. City of Harker Heights, 503 U.S. 115, 121 (1992) (internal quotation marks omitted). Relevant here, "an official's discretionary acts, exercised in carrying out official duties, do not necessarily represent official policy." Perdue v. Harrison, No. 1:17CV403, 2017 WL 4804363, at *2 (M.D.N.C. Oct. 24, 2017) (unpublished), recommendation adopted, slip op. (M.D.N.C. Dec. 6, 2017). "Rather, the official must have final authority over government policy with respect to the action in question to trigger official[-]capacity liability." Id. (internal quotation marks omitted). The Complaint makes no factual allegations showing

[9](...continued)
that, when dealing with cases involving unnamed defendants, district courts should remain free "to ascertain what treatment should be given and when," including whether to "dismiss[] the John Doe defendants." Id. (internal quotation marks omitted). In this case, the Court should exercise that discretion by effecting the dismissal of this action (other than as to the individual-capacity claim against Defendant Lutz for excessive force) without prejudice to Plaintiff's right to pursue individual-capacity claims for excessive force and/or deliberate indifference to serious medical needs against unnamed employees of the Rockingham County Detention Center, if Plaintiff later can identify them.

that Defendant Lutz (or any other Defendant) injured Plaintiff pursuant to any policy or custom of the Office of the Rockingham County Sheriff and/or possessed final authority over any such custom or policy. (See Docket Entry 2 at 1-14.) Accordingly, the Court should dismiss any official-capacity claim against Defendant Lutz (and any other Defendant affiliated with the Office of the Rockingham County Sheriff), pursuant to Section 1915(e)(2)(B)(ii), for failure to state a claim.

Consistent with the (recommended) whittling down of this action to a lone individual-capacity claim for excessive force against Defendant Lutz (and possibly a related, individual-capacity claim for excessive force against an unnamed Defendant, along with individual-capacity claims against two other unnamed Defendants for deliberate indifference to Plaintiff's serious medical needs), the Court should summarily deny the instant Motion's request for broad-based, preliminary injunctive relief, which (if granted) effectively would strip the Rockingham County District Court of jurisdiction over any civil or criminal case involving Plaintiff and unreasonably would entrench upon the prerogatives of state probation officials and law enforcement officials in Rockingham County (see Docket Entry 3 at 1-2). In reaching that conclusion, the Court first should note that "[a] preliminary injunction is an extraordinary remedy," Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017). Moreover, the Supreme Court has held that "the

-22-

basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies . . . ." Sampson v. Murray, 415 U.S. 61, 88 (1974) (internal bracket and quotation marks omitted). In light of the narrow nature of the claims proposed to proceed, "there is no [basis for a] finding by the [C]ourt that [Plaintiff] would suffer irreparable damage or that []he has no adequate remedy at law in the event the [sweeping, requested preliminary] injunction should be denied," Alberti v. Cruise, 383 F.2d 268, 272 (4th Cir. 1967). To the contrary, "[t]he possibility that adequate compensatory or other corrective relief will be available [for the limited, surviving claim(s)] at a later date weighs heavily against a claim of irreparable harm." Di Biase, 872 F.3d at 230 (internal ellipsis and quotation marks omitted); see also id. (identifying showing of "likel[ihood of] suffer[ing] irreparable harm in the absence of preliminary relief" as one of four factors "[a] plaintiff seeking a preliminary injunction must demonstrate"); Pashby v. Delia, 709 F.3d 307, 320 (4th Cir. 2013) ("[E]ach preliminary injunction factor [must] be satisfied as articulated." (internal quotation marks omitted)).

Put another way, "[t]o obtain prospective relief, . . . [P]laintiff must show, inter alia, 'a sufficient likelihood that he . . . will again be wronged in a similar way.'" Marcavage v. City of New York, 689 F.3d 98, 103 (2d Cir. 2012) (emphasis omitted) (quoting City of Los Angeles v. Lyons, 461 U.S.

-23-

95, 111 (1983)).  "In establishing a certainly impending future injury, [ P]laintiff cannot rely solely on past injuries; rather, [he] must establish how he . . . will be injured prospectively and that the injury would be prevented by the equitable relief sought." Id. (citing Whitmore v. Arkansas, 495 U.S. 149, 158-59 (1990), Lyons, 461 U.S. at 102-03, and O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)).  The Complaint's claim(s) which should survive pertain to discrete events that occurred while Plaintiff remained in pretrial detention (see Docket Entry 2 at 6-8), and he has not shown that, in light of his subsequent release to house arrest, he faces the likelihood of future injury of that same sort, absent entry of the drastic, preliminary injunction he seeks (see Docket Entries 3, 4).  That failure mandates denial of the instant Motion. See, e.g., PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 128 (4th Cir. 2011) ("[The Fourth Circuit] will vacate an injunction if it . . . does not carefully address only the circumstances of the case.").[10]

_____

[10] Abstention principles articulated in Younger v. Harris, 401 U.S. 37 (1971), further compel denial of the instant Motion.  "In Younger, the Supreme Court detailed our 'national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances.'"  Nivens v. Gilchrist, 444 F.3d 237, 241 (4th Cir. 2006) ("Nivens II") (quoting Younger, 401 U.S. at 41).  The Younger doctrine generally requires abstention by a federal court "if (1) there is an ongoing state judicial proceeding brought prior to substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides adequate opportunity to raise (continued...)

Although Plaintiff qualifies for pauper status, the bulk of the claims in his Complaint fail as a matter of law and/or due to judicial and/or prosecutorial immunity. In addition, Plaintiff has not shown entitlement to preliminary injunctive relief in regard to his colorable, individual-capacity claim for excessive force against Defendant Lutz (or the potentially viable individual-capacity claims for excessive force and/or deliberate indifference to serious medical needs which Plaintiff should retain leave to pursue against a few unnamed Defendants).

---

[10](...continued) constitutional challenges." <u>Id.</u> As to the first of those elements, the Complaint's allegations (as detailed in the Introduction) indicate that proceedings in state criminal cases began before the filing of the Complaint and remain ongoing. As to the second element, the Fourth Circuit has held that "North Carolina has a very important, substantial, and vital interest in preventing violations of its criminal laws." <u>Nivens v. Gilchrist</u>, 319 F.3d 151, 154 (4th Cir. 2003) ("<u>Nivens I</u>"). As to the third element, the Fourth Circuit has ruled that "ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." <u>Gilliam v. Foster</u>, 75 F.3d 881, 904 (4th Cir. 1996). Because the basic elements triggering <u>Younger</u> abstention arise in this case, this Court could entertain the instant Motion only if "(1) 'there is a showing of bad faith or harassment by state officials responsible for the prosecution'; (2) 'the state law to be applied in the criminal proceeding is flagrantly and patently violative of express constitutional prohibitions'; or (3) 'other extraordinary circumstances' exist that present a threat of immediate and irreparable injury," <u>Nivens II</u>, 444 F.3d at 241 (quoting <u>Kugler v. Helfant</u>, 421 U.S. 117 (1975)). Here, Plaintiff has not made a sufficient showing to bring this case within any of the foregoing exceptions. (<u>See</u> Docket Entries 2, 3, 4.)

**IT IS THEREFORE ORDERED** that Plaintiff's Application (Docket Entry 1) is **GRANTED.** The Clerk shall send Plaintiff a summons form for Defendant Lutz, which Plaintiff shall properly complete (including with an address suitable for service) and shall return to the Clerk by November 17, 2021. If Plaintiff timely returns a properly completed summons form for Defendant Lutz, the Clerk shall issue said summons and shall forward it (along with all necessary service of process materials and a copy of this Recommendation) to the United States Marshals Service, which shall effect service of process. Failure by Plaintiff to comply with this Order shall result in the dismissal of this action.

**IT IS RECOMMENDED** that the Court deny the instant Motion (Docket Entry 3) and dismiss this action under Section 1915(e)(2)(B), for failure to state a claim and/or due to judicial and/or prosecutorial immunity, except as to Plaintiff's individual-capacity claim against Defendant Lutz for excessive force (and without prejudice to Plaintiff's right to pursue individual-capacity claims for excessive force and/or deliberate indifference to serious medical needs against unnamed employees of the Rockingham County Detention Center, if he later can identify them).

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

November 3, 2021

-26-